By the Court.
Sandford, J.
The first position taken in the complaint is, that the devises and bequests made to Mrs. Kane, by her grandfather, in the will and five first codicils, are not in whole or in part revoked, altered or affected, by the sixth codicil; which, although it attempted to revoke those devises and bequests, is uncertain and insufficient for that purpose, and is otherwise wholly inoperative and void.
The sixth codicil unquestionably assumes to alter and revoke all the prior gifts made to Mrs. Kane and her issue, with, perhaps, some unimportant exceptions ; but it is plain the testator intended to revoke those gifts, only so far as he disposed of the subjects of them in a different manner in his sixth codicil. The two pecuniary legacies and the water stock may be" an exception, but as to the bulk of the property, he has declared that intention emphatically in the last clause of the codicil. If, therefore, the new and different dispositions which he has made, *520 are so indefinite, vague or uncertain, that the court cannot give them effect, the argument is undoubtedly sound, that the codicil being void for this cause, the gifts in the will itself are not revoked. Upon the same principle, if the “ different disposition ” made by the codicil is impracticable for any cause, the testator's intention to dispose of the property by that instruinent fails to that extent; no different disposition of it is made, and therefore, according to his express declaration in the codicil, the will is not revoked.
Such being the law, and the charge of uncertainty being brought against three of the five clauses of the codicil which treat of those gifts, it becomes necessary to examine and classify the provisions previously made for Mrs. Kane and her children. We will then be prepared to apply the codicil to the preceding-devises and bequests, and can the better determine how far the imputation of uncertainty and ambiguity is well founded, and if the codicil be valid, can give to it a proper construction.
In disposing of what he intended to give to the family of his daughter, Mrs. Langdon, the testator’s general plan was to give an equal amount of property to each of her children, limiting the enjoyment of it to the life of each, and vesting the property in remainder in his or her issue. In the event of the death of either of the grand-children, without leaving issue, the testator, by cross limitations, transferred his or her share to the other grand-children. This general scheme was applied to gifts of personalty, as well as to the real estate devised ; and the exceptions, in respect of both, seem rather to make the general design more marked and distinct.
Having this in view, let us see what were the provisions which he had made for Mrs. Kane and her issue, prior to the execution of the sixth codicil. And, in so doing, we will notice, first, those in which she, or her issue, or both, took vested estates, or interests, at the death of the testator ; and secondly, those in which a contingent estate or interest, executory devise or other possibility, was conferred on her or them.
First. The devises and bequests in which Mrs. Kane and her issue, or either of them, took vested estates or interests.
(1.) A devise in fee to Mrs. Kane, of a lot on the west side of Lafayette Place. This is in the fifth codicil, and is the only *521 devise made to her in fee in possession. It is made subject to a discretionary power in the executors to execute a settlement, which it is unnecessary for us to consider.
(2.) Devises of life estates to Mrs. Kane, with remainder to her surviving issue in fee, with an executory devise over, on her dying without issue, to her surviving brothers and sisters, or to such of them as are named in the devises respectively. The gifts of this class are as follows : One sixth of the lots on Lafayette Place and the Bowery, and of the lands lying west of Greenwich street between Morton and Charlton streets, described in the second paragraph of the will. One fourth of the four houses and lots on Broadway, described in the third paragraph. One-sixth of three lots on the west side of Lafayette Place, mentioned in the second clause of the first codicil. And one-sixth of nine lots on Grand street, mentioned in the latter part of the second codicil. In the two former gifts, the executory devise, on her death, is to the brothers and sisters then surviving ; in the two last, the survivorship is not so explicitly defined.
(3.) Two devises to Mrs. Kane, in remainder, viz.: One seventh of the house and lot on Lafayette Place, given to Mrs. Langdon, for life, in the first clause of the will, to take effect on her death ; and one-seventh of one-half of the lots on Fourteenth and Fifteenth streets, described in the first clause of the second codicil, to take effect upon the death of John Astor and Mrs. Langdon. In both of these devises, Mrs. Kane took a vested remaindel* in fee, which was liable to be divested on her death before the termination of the precedent life estates in the same property. (Williamson v. Field, 2 Sand. Ch. R. 533.)
(4.) An absolute legacy to Mrs. Kane, being one-sixth of the one hundred thousand dollars of water stock mentioned in the last clause save one of the second codicil, defeasible, however, as to the capital, upon her death, under twenty-one, without issue. (1 Jarm. on Wills, 775; Bland v. Williams, 3 M. and K. 411.)
(5.) One-sixth of one hundred thousand dollars of Trust Company certificates, given to Mrs. Kane on the death of her mother, defeasible as to the capital, if she should die under twenty-one without issue.
*522 (6.) One-seventh of the plate, bank stocks, New York City stock, and Trust Company certificates, given to her mother for life, in the first clause of the will; and .the seventh of the one half of the furniture of John Astor’s house, mentioned in the second codicil; subject to be divested, in respect of the former, on her death before the decease of her mother, and in respect of the latter, on her death during the life of either her mother or John Astor ; in which events respectively, her issue will take in substitution in her stead.
It is with some hesitation, that we hold these legacies ta be vested in Mrs. Kane. We consider the gift in the will to be the same, in effect, as if the testator had said, “ I give the income of these stocks, etc., to Mrs. Langdon for life, and the capital to her children, but if either of the latter die in her lifetime, leaving issue, I give the share of such child to such issue, if without issue then I give it to Ms or her brothers and sisters, and their issue.” The leaning of the courts is strongly in favor of holding legacies to be vested, in analogy to the rules governing devises, where it can be done without trenching upon established principles and adjudged cases; and the following authorities seem to sanction the construction we have adopted. (See 1 Jarm. on Wills, 763, 4, 772 to 777 and notes; 1 Roper on Leg. 584, 585; Eyre v. Marsden, 2 Keen 564; Hervey v. McLaughlin, 1 Price 264; Salisbury v. Petty, 3 Hare 86; Shailer v. Groves, 6 Hare 162, S. C. 11 Lond. Jur. R. 485, and before the Lord Chancellor, 16 Law Journ., ch. 367; Berkeley v. Swinburne, 16 Simons 275, S. C. 12 Lond. Jur. R. 571, and before the Chancellor, 17 Law Journ., ch. 416; and Kimberly v. Tew, 4 Dr. and War. 139, S. C. 2 Conn, and Law. 368.)
Second. Devises and bequests to Mrs. Kane and her issue, or to either her or them, which were' contingent at the death of the testator, and would vest on the death of her mother, brothers or sisters, or on some other uncertain event.
1. An executory devise to Mrs. Kane, in the respective shares of her brothers and sisters, in the real estate mentioned above under the second and third subdivisions of the vested estates, to take effect in the event of their respectively dying before her without issue them surviving.
A like executory devise in one seventh of one half of the *523 lands devised to Charles A. Bristed, in the fifth paragraph of the will.
2. Contingent legacies or limitations to Mrs. Kane in personal property. These are, first, in the shares of her respective brothers and sisters, in the plate, bank stocks, city stock and Trust Company certificates, given to her mother for life in the first clause of the will; and in the one half of the furniture of John Astor’s house, mentioned in the second codicil; contingent on their dying without issue before the death of those having precedent life interests therein, and also contingent on her surviving those life interests.
Secondly. The two legacies of twenty-five thousand dollars each, given to Mrs. Kane in the third clause of the will, contingent, the one upon her attaining the age of twenty-four, and the,other upon her attaining the age of thirty years.
Thirdly. Her chance of survivorship of her mother and some one of her brothers and sisters who may die under twenty-one, and.without issue, so as to participate in their shares of the Trust Company certificates, given to Mrs. Langdon for life in the second codicil, and of the one hundred thousand dollars of water stock given to the six children of Mrs. L. in the same codicil.
And fourthly, her interest in one fourteenth part of one hundred and fifteen thousand dollars, the use of which is given to C. A. Bristed for life, by the will, contingent on his death in her life-time, without surviving issue; and further contingent inerests in the same sum, on that event, and also the prior death of her brothers and sisters, or any of them, without issue.
3. Contingent remainders and executory devises to the issue of Mrs. Kane. Thus, in the devise of the house and lot on Lafayette Place to Mrs. Langdon, there is an executory devise -in the respective shares of Mrs. Kane’s brothers and sisters, in the event of their dying, after her death, without issue; and the like interest in the devise of the Fourteenth and Fifteenth street lots. Also a contingent remainder in Mrs. Kane’s share of the same lots, which will vest, in the event of Mrs. Kane dying-before her mother or before John Astor, in such of her issue as survive both of those persons. An executory devise in the *524 lands devised to Mr. Bristed, in the event of his dying without issue, after the death of Mrs. Kane. Lastly, in the devises of the three lots on Lafayette Place, mentioned in the second clause of the second codicil, and the nine lots on Grand street described in the latter part of the second codicil, like executory devises in the respective shares of Mrs. Kane’s brothers and two sisters, named in those devises, in the event of their dying without issue after the death of Mrs. Kane, provided the survivorship expressed in those two devises has reference to the death of the testator. The devise in each instance, is to the six children of Mrs. Langdon, or such of them as survive the testator. The devise over, in the case of the Lafayette Place lots, is to “ his or her other brothers and sisters, in the same item named, surviving, in fee simple.” In the devise of the Grand street lots, it is “ to the survivors of the said six, and to their heirs and assigns for ever.” The only period of time applied in express terms to the entire six as a class, in both of these devises, is the death of the testator. The fact that in the devises over contained in the second and third paragraphs of the will heretofore discussed, the testator uses the explicit language, “ her then surviving sisters,” etc., is quite as forcible to show that a different rule was intended in these instances, as it is to establish a general intention governing all these ulterior limitations.
We are decidedly of the opinion that the issue of Mrs. Kane take executory devises, in the contingency stated, in the real estate given to Mrs. Langdon’s other children in the first and second codicils, and will so decide, if we find it to be necessary, in entering our judgment.
4. Contingent legacies or limitations to Mrs. Kane’s issue, in personal property. ' These are, first, in the plate, stocks and certificates, described in the first clause of the will, contingent on their mother dying before Mrs. Langdon; and next, upon that event,.in the shares of Mrs. L.’s other children, if'they die before her without issue.
Secondly, the like contingent interests in the John Astor furniture, the event of his death being added.
Thirdly. A contingent interest in the legacy of ene hundred and fifteen thousand dollars, given to Mr. Bristed for life de *525 pendent on Ms death without issue, and the prior death of Mrs. Kane ; and also, in those events, in the shares of such of her brothers and sisters as die without issue during the life of Bristed.
We will now consider the sixth codicil, in reference to these various devises and bequests.
There is no room for doubt, in the language of the third and fourth clauses of the codicil. They dispose of the water stock and the lot on Lafayette Place, which had been given to Mrs. Kane, the one absolutely, and the other in fee, and the third clause expressly revokes the gift of the two pecuniary legacies.
The first clause deals with “ all such shares, estates and interests in land,” (except this lot in fee on Lafayette Place,) as are in the will or any codicil thereto, given on the decease of the testator to Mrs. Kane or to her issue.
It was argued, on this language, that there were no such estates or interests, as those thus described, because Mrs. Kane’s issue took nothing on the decease of the testator; and that this is more clearly shown by his applying the second clause to interests which vested in Mrs. Kane on his decease, although not to be enjoyed till the death of her mother. We have already answered the first suggestion, by holding that the issue did take valuable vested remainders on the death of the testator ; and we think that in the first clause of the sixth codicil, he plainly intended to include all the estates and interests in realty, which, on his decease, would vest in interest in Mrs. Kane, and all which would then vest in interest in her children. All such estates and interests were literally and truly given to them on his decease. They were then given, if they were given at all.
This is made more plain by the description of the estates and rights which he sought,to affect in the second clause. Those are such as Mrs. Kane and her issue would have been entitled to after the death of her mother, brothers, and sisters ; which, although in one sense given at his decease, because given by his will, which then took effect, were not certainly or effectually given, until by the death of the respective persons named they would vest in interest. Otherwise than upon those events, and *526 the survivorship of Mrs. Kane or her issue, they were never given to the latter.
' It was earnestly contended, that the first clause did not take, and was not designed to take, anything from the issue, and must be limited to the interests vested in Mrs. Kane. One reason advanced in support of this construction, was the limitation, to Mrs. Langdon’s children, of the gift of one-half of what was taken away by this clause, without including their issue in the bequest. This reason is neutralised by the circumstance that in the same sentence the other half is vested in trustees for Mrs. Kane’s life, and after her death is given to her children, and if she leave none, then to her brothers and sisters or their issue. Besides, the reason itself is much impaired, in its force, by the provision that the gift to the other children of Mrs. Langdon was to be taken as an increase of the shares given to them and their issue, in the same property. These words, it is true, may be satisfied by using them as an indication of the various classes of Mrs. L.’s children who were to take under the first clause ■ but in connection with the general scope of the will, and the previous words—“ or to the issue of the said Louisa,” they lead very forcibly to the conclusion that the gift to the other children of Mrs. L. was intended to be a gift to them respectively for life, with remainder to their issue, and probably with cross limitations over in the event of their decease without issue.
Another reason for withholding the gifts to Mrs. Kane’s children from the operation of the first clause of the codicil, was found in the omission of the words “ and her issue,” in the fifth clause; by means of which the power is conferred upon Mrs. Langdon to restore to Mrs. K. what had been taken from her by the codicil, without speaking of what had been taken from her issue.
It will be seen, elsewhere, that we construe this clause precisely as if those words were expressed in it, because it is obvious from the whole codicil that the testator here speaks of “ Louisa” as a stock or root, and as representing both herself and her issue. If the fifth clause required a literal construction in this particular, it would be exceedingly difficult to overcome the very plain language of the first clause, where it speaks of *527 the devises intended to be affected by it. Every share, estate or interest in land, which, on the testator’s decease, was given in the will, or either of the prior codicils, to Mrs. Kane, or to her issue, is in distinct and positive terms, embraced in the disposition made by. that clause of the sixth codicil.
Now as to the other uncertainties and ambiguities alleged to be apparent in the first clause.
First, as to the “ other children” of Mrs. Langdon who are to take. We think the provision that they are to take and hold this devise “ as an increase of the shares given to them and their issue in the same property,” leaves no room to doubt that the testator intended the devise for such of Mrs. L.’s children-, and such only, as already had a share in the several real estates embraced in the first clause of the codicil. No other children answer the description of the devisees, which is substantially “ the other children of Mrs. L. who already have shares in the same property.”
Thus, the testator intended, by this devise, to increase to one fifth the shares given to Mrs. Langdon’s children. (Mrs. Boreel excepted,) and their issue in the second paragraph of the will; to increase to one third the shares given to Mrs. L.’s four daughters in the Broadway houses, devised in the third paragraph, and the like. The effect of this construction is, to exclude Mrs. Boreel and her issue from any participation in the devises made by the first clause of the sixth codicil, excepting only the interest in the Broadway houses, and to limit the increase in each instance to the shares and interests of those children of Mrs. Langdon, to whom devises were made in the will and prior codicils, of interests in the same specific parcels of real estate.
There is no difficulty in the remainder of the first clause, keeping in mind the general scope of the provisions for the family of Mrs. Langdon. The testator gave the undivided half of all the property affected by this clause, to his executors, in trust for Mrs. Kane during her life, and after her death he gave the same half to her surviving children, or if she leave none, to her surviving brothers and sisters or their issue. The words, “ her surviving children,” should undoubtedly be construed “ issue her surviving and the devise is a trust during her life, and on her *528 death a legal estate in her issue, with an executory devise over to her brothers and sisters and their issue.
It is proper to observe that the first clause of this codicil relates to real estate only.
By the second clause of the sixth codicil, the testator devised and bequeathed “ all estates, rights, and interest in lands, stocks, personal effects or money, to which” Mrs. Kane or her issue would have been entitled, under his will or any of its codicils, after the death of her mother, brothers or sisters.
If this had stood alone, the argument would have been plausible that it applied to all estates and interests which vested in possession, for the first time, on or after the death of the respective relatives enumerated. But when considered in connection with the first clause, which includes all such estates and interests in land as were given to Mrs. Kane or her issue on the decease of the testator, it is evidently impossible to give due effect to both, without limiting the second clause to its literal significance, that is, to interests which the will and codicils gave to her and her issue, which were to arise and vest upon the death of those relatives respectively. And further, all such gifts, as we have seen, were then to take effect only upon certain contingencies ; there being no devise or bequest to which' Mrs. Kane or her issue would then be entitled, for the first time, except such as were purely contingent
A few words will dispose of the remaining observations made upon the second clause. The limitation of the gift to the brothers and sisters and their issue, is to be construed according to the uniform design of the will, giving life estates to the brothers and sisters, and remainders absolute and in fee to their issue. A just construction would probably add a remainder over, on their death without issue, in order to give full effect to the provision that the gifts were made as an increase of their respective shares or interests in the same property. As to the brothers and sisters who were to be benefited by the gift in this clause, the same rule is to be applied that we have stated in our examination of the first.
It was said that the gift involved an absurdity in this, that it gave to a brother and his issue, for example, an interest which *529 could never arise except upon his death without issue. This is nothing more than what occasionally and necessarily occurs from the use of general terms in speaking of families and classes of persons in testamentary dispositions. Whát cannot take .effect, when such terms are used, presents no obstacle to giving full effect to those dispositions to which the terms are applicable. Therefore the language used in this case does not impair the clause. The interest which Mrs. Kane would take on the death of one of her brothers without issue, will devolve upon the other brothers and sisters.and their issue.
If we limit the operation of the second clause in its effect upon the real estate, to those interests which were contingent until the death of the several persons whose death was to entitle Mrs. Kane or her issue to such real estate, we see no reasonable ground upon which we can give it a wider or more extended application in respect of personal property. The testator has shown no intention to make a distinction in this clause between real and personal estate. He groups all together, in a single sentence, attaching the same test of interest to all, both in point of time and manner. He has not said, in any part of this codicil,- that he intended to take from Mrs. Kane any share or interest in personal property given to her on his decease, except as he has expressed himself in the third clause, and there is no provision which will warrant us in giving by implication such an effect to the codicil in respect of such shares or interests. The instrument is abundantly explicit in what the testator has declared on this subject. It leaves no room for implication.
Our conclusion is, therefore, that the shares and interests in personal property which vested in Mrs. Kane on the death of the testator, other than those enumerated in the third clause, are not affected or impaired by the sixth codicil, so far as her right is concerned. The contingent interests in the same property, which devolve upon her issue by substitution in the event of her death before the termination of the precedent life interests therein, fall within the second clause of the codicil.
We observe, further, that neither the executory devise and bequest to Mrs. Kane, nor those to her issue, in the real and per *530 sonal estate given to Hr. Bristed for life, are affected or impaired by this codicil. The first clause has no application, because the estate in the land devised to Bristed is an executory devise to these parties. The second clause does not apply, because this executory devise, and the limitation over in the legacy, do not take effect on or after the death of either the mother, brothers or sisters of Mrs. Kane. They will take effect, if ever, on the death of Mr. Bristed.
To proceed with the sixth codicil. The third and fourth clauses do not require any observation in this place, and we will next consider the fifth.
The strongest argument in favor of avoiding the codicil in whole or in part, thus leaving the provisions for Mrs. Kane in the will to stand unimpaired, is founded upon the difficulty of giving effect to this fifth clause. It is perfectly clear that the power conferred upon Mrs. Langdon to restore to her daughter and her daughter’s children the property taken from her in the previous clauses of the codicil, or some part of that property, is a vital part of the “ different disposition” made by the testator ; and unless that power be valid and effectual, the codicil must, to the extent of the property, which the power was intended to affect, be deemed to have failed to revoke the will.
We do not feel any difficulty in disposing of the first question presented, on the construction of the fifth clause, viz.: whether, in order to “ give to Louisa and her issue” the donee of the .power, must give to them equally, per capita, or can appoint to them to take in succession. We think the testator’s intention, so frequently and uniformly exhibited in the will in his gifts to all of Mrs. Langdon’s children, must govern here ; and that it is clearly within the power, and is distinctly its design, to confer life estates and interests on Mrs. Kane, with remainders to her children and issue. In making a direct gift to her and her issue, the power, we think, imperatively requires such a limitation of the gift.
So if the donee had chosen to create a trust for Mrs. Kane and her children, in the execution of the power, it is quite apparent that she might appoint the use of the property to Mrs. Kane for life, and the remainder to her children; and it is pos *531 sible that she might have limited the whole to the children in trust, to the exclusion of the mother, although we need not decide that point.
In the next place, it is asked whether the testator meant to restore what had been taken from Mrs. Kane’s issue, assuming that the codicil does take something from them, and did he intend to permit Mrs. Langdon to give to the issue what he had taken from Mrs. Kane ? The answer to the latter inquiry, so far as an answer is necessary, has been given in our preceding observations. As to the other point, the whole context of the codicil, as well as the whole scope of the will, show that the testator designed to include in the power what had been taken from the issue, with that taken from Mrs. Kane. If limited to what had been taken from her, it will render the power to give to her and her issue nearly or quite insensible. The power, thus limited, would apply only to her life interest, with the exception of a small part of the entire property, and to give an estate which terminates with her life, to Mrs. Kane for life, and after her death to her'issue, is an absurdity.
The will, throughout, proceeds upon a principle of absolute equality between the children of Mrs. Langdon, and upon a plan of giving life interests to each, with remainder to their respective issue ; the child in every instance preceding and representing the issue, as the stock and the meritorious fountain of the-gift. The only infringement of this principle of entire equality is found in the codicil, and there it is still affirmed as to Mrs. Kane’s brothers and sisters and their issue. In the object, apparently, of exhibiting his displeasure towards Mrs. Kane, the testator, while he withdraws from her all control of her life estate, still continues to her issue, in the property given in trust in the first clause of the codicil, the same legal residuary interest he had previously conferred. And, there being no possible-reason to suppose that he intended to visit upon her children a greater measure of his anger than he did upon her, it would be-doing the greater violence to his general intent in the disposal of his property, to limit the power in the fifth clause to the property taken from her, and thus to exclude from it that taken from her issue.
He evidently speaks, in this part of the codicil, of Louisa, as *532 he had regarded her in the prior will and codicils, that is, as the parent stock and representative of this part of his family, by and through whom, and after her previous use and enjoyment, her issue were to become entitled to a part of his estate. When he said that Mrs. Langdon might restore to her and .her issue, one half of the property he had “ taken from Louisa,” he plainly meant what he had taken from her and her family regarded as one stock or branch ; and to give effect to his design as shown by the will and all the codicils, we must consider this clause as if it read, “ taken from Louisa and her issue and given to others.”
The most serious difficulty remains to be noticed. It is said to be simply an impossibility to execute this power so as to give to Mrs. Kane and her children, half “ in value” or any lesser valued share, in the estates and interests attempted to be taken from her and them by this codicil. Those interests consist, not merely of life interests, which might be estimated, but of defeasible vested remainders, contingent remainders, and executory devises and bequests, taking effect on the failure of issue. It is too plain for argument that such interests are. incapable of valuation, and if the power is to be exercised solely in reference to a fixed proportion of the value of all the estates and interests taken from Mrs. Kane and her issue, it is utterly impracticable.
It is contended that the true construction of the clause is this ; Mrs. Langdon may give to Mrs. Kane and her issue, any part of each and every estate, interest, share or legacy, taken from her or them, not exceeding one undivided half thereof. Thus, she may restore to them one fourth, or one half, of the lot on Lafayette Place, mentioned in the fourth clause, or of the property in Grand street, and so on, until she shall have exhausted the power. But this, it will be .observed, discards entirely the words “ in value,” in the fifth clause. Those words, it is said, have a meaning, and the court is bound to give effect to them, without change or rejection, as much as it does to any other words in the codicil.
We have considered this subject with the care that its importance demands, deeming that upon its determination the whole fifth clause depends, and with that clause the whole revocation made by the codicil, so far as it affected the property which the testator sought to subject to the operation of the power.
*533 It is undoubtedly true that, in construing a will, we are bound to give full effect to every part of it, and to single words as well as to sentences and paragraphs. But it is a paramount principle that the court shall carry out the general intent of the testator.; and where a particular word or sentence is repugnant to the general intent and design" of the whole will, or tends to render it incongruous or insensible,.such word or sentence must give way, rather than sacrifice the whole scheme of disposition disclosed by the general tenor of the instrument. (1 Jarm. on Wills, 420, and the cases cited.)
To "examine the point with a special application, let us suppose that Mrs. Kane and her issue had not been mentioned in the will or previous codicils, and that the sixth codicil had taken up the same estates and interests it now speaks of, treating them as having been given in the previous instruments to John J-. A. Langdon, who had since died. We will suppose, further, that the sixth codicil had thereupon given one half of those interests to the executors, in trust for Mrs. Kane and her children, as it now does in the first clause, and then in the fifth clause had conferred upon Mrs. Langdon, in the same terms this fifth clause does, the power to give to her and them, “ any part not exceeding one half in value of the real and personal estate,” by the will and previous codicils given to John J. A." Langdon and his issue.
Would the court have any difficulty in saying that it was bound to give effect to the manifest general design of the testator to provide for his grandchild and her family ; and if the special limitation attached to the exercise of the power by the irse of the words “ in value” were repugnant to that design, or, if applied to the power, would render its exercise impossible, that the court must sacrifice those words, rather than sacrifice the testator’s scheme, and thus carry into the residuary estate the property destined for the benefit of the granddaughter and her issue? We are satisfied no court would hesitate a moment, if the subject were presented to its consideration in this aspect.
Does the actual presentation of the point authorize us to view it in a different light? It is true the testator had given' this property to Mrs. Kane and her issue in the will and prior codicils ; and it is a sound rule that the dispositions made by a *534 will are not to be disturbed by a codicil, further than is absolutely necessary in order to give it effect, and a clear disposition made by the will, is not revoked by a doubtful expression or inconsistent disposal in a codicil.
Here the intention to revoke is not doubtful or ambiguous. It is as plain as language can make it. The actual effective revocation is, to be sure, limited in terms, (with a single exception,) by and to the different effective dispositions made by the codicil itself. To give effect to the codicil as intended, all the dispositions in the prior instruments must give way. The intent is effectually carried out as to half of the property, by vesting it in trust in the first clause of the codicil. If the power apply only to one half of the residue, (or one fourth of the whole,) then, without regard to the questions arising on the third clause, the intent is fully carried out as to one fourth of the property, by giving it to Mrs. Kane’s brothers and sisters, to Mrs. Lang-don, and to the residuary legatees ; (making, with the gift in trust, three fourths of the whole ;) and the inquiry would then be limited to the remaining fourth, and to the question whether it should pass under the will, or be subjected to the power in the fifth clause of the codicil.
But conceding, for the present, that the power applies to one half of the property in question, then the inquiry remains, shall the plain intention of the testator, to revoke his previous gifts of that half, and instead of a direct gift of the same to Mrs. Kane and her issue, to make her and their enjoyment of the same dependent upon the discretion and judgment of her mother, be entirely defeated, because, instead of using the words “ not exceeding one half,” he has said, “ not exceeding in value one half,” of the real and personal estate taken from her and them by the codicil ? It seems to us we should do great injustice to the testator, if we permitted the insertion of these words, doubtless an inadvertent expression, to defeat the power, and thereby either destroy the gift to Mrs. Kane and her children, intended to be made through the power, or do equal violence to his declared purposes by holding them to be entitled, under the will, to the property embraced within the terms of the power.
There are other reasons besides the one founded on the testa *535 tor’s plain meaning and design, which forbid us to overturn this power as being void for uncertainty. One is, that the execution of the power by an appointment to the extent of half “ in value,” would produce to the beneficiaries of the power, the same result, in its practical operation, as an appointment of an undivided half of each and every parcel of the property affected. That is, the value of the gift would be precisely the same, on the power being exhausted, in the one case, as in the other. And it would be an extreme example of judicial construction, to declare this codicil void for ambiguity or uncertainty, merely because of the addition of these words, “ in value,” which, if made effective, would do no more than to alter the mode of arriving at the gift, without affecting at all its ultimate amount or extent, as conferred by the other words used independent of those.
Another reason is found in the consequence which would result from giving effect to those words, if there were no difficulty in the practical execution of the power in that mode. Under the power to appoint any part not exceeding half in value, it is contended, and probably rightly contended, that Mrs. Langdon could make an appointment operating upon the whole of any one lot or parcel of property given to others in the codicil. Thus, that she could give to Mrs. Kane and her children, the whole of the lot on Lafayette Place, devised to Gecilia Lang-don in the fourth clause, and could, in like manner, give to them the whole interest and estate devised to either of the other brothers and sisters of Mrs. Kane, not exceeding in the aggregate one half of the property subject to the power. The effect of this would be to give to Mrs. Langdon an unregulated and capricious control over all the property subject to the power, by which she could take from some of her children all that the codicil gave to them, and take none from others; a control entirely at war with the principle of equality between those children, which is so distinctive a feature of all the testator’s dispositions, and one which we have no reason to believe the testator ever thought of conferring.
The necessary effect of the limitation of the power to one half of this property, which as a whole is, and during Mrs. Langdon’s lifetime must be, wholly incapable of appraisal or *536 pecuniary valuation, is to require, in its execution, an appointment of undivided portions of the property. Whether the donee might execute the power at several times, giving at one time an undivided fourth and at another an eighth, or the like, we need not now determine. The power to give any part, not exceeding an undivided half, of the real and personal estate treated of in the codicil, in our opinion relates to a part of the whole propérty given, not to a portion of any one lot, parcel, or bequest. It is so literally. It applies to “ any part, not exceeding half, of all the real and personal estate not to “ any part, not exceeding half, of all or any of the property.” The words “ any part ” are qualified by the immediate sequence of the words “ not exceeding one-half,” and by the nature of the interests affected, so as to be subordinate to the latter words, and to refer merely to lesser undivided shares in the whole property affected. This interpretation also accords better,, as we have seen, with the principle of equality among the other children of Mrs. Langdon, so sedulously maintained throughout the will and codicils, including the one under consideration.
Upon the whole, we cannot accede to the proposition that the provisions of the sixth codicil, or any essential part of it, are so uncertain, vague, or doubtful, that the codicil should be declared void or inoperative. We think, with the application of the ordinary principles of law governing the construction of wills, guided by a mind fairly disposed to do justice to the testator’s clearly expressed intentions, as well where they tend to diminish the gifts to his issue as where they serve to enlarge them, there is no insuperable difficulty in giving effect to the codicil, none which a patient investigation will not satisfactorily overcome.
Our next inquiry will be, to what property is the power given to Mrs. Langdon applicable.
Our conclusion that the power applies to no more than an undivided moiety of each specific portion of the property subjected to it, disposes of the idea that it might be applied to the entire half part which the first part of the codicil gives to Mrs. Kane’s brothers and sisters, leaving undisturbed the half part in that clause given to trustees, for her use during her life, and afterwards to her children. And the point whether the latter half is or is not subject to the exercise of the power, has no *537 other importance than this, that as it is now limited, Mrs. Kane has a separate estate in it for life, which is inalienable, whereas, if operated upon by the execution of the power as attempted, her life estate will be a legal interest.
While on this point, we may as well dispose of it, by saying that in our opinion the property thus vested in trust in the first clause is not within the scope of the power conferred by the fifth. It is not substantially “ taken from” Mrs. Kane, nor is it, in any beneficial or practical sense, “ given to others.” It remains her own during life, with the same extent of estate and interest for all the purposes of use and enjoyment, and the same in every respect, except the power of making leases and selling, which she had under the will. By the words “ given to others,” the testator meant something more than a nominal title without any beneficial right or interest, such as is given to these trustees. Therefore, if the qualification of her estate, made by changing it from a legal into a trust interest, is pro tanto, taking an estate from Mrs. Kane, the property so taken is not “ given to others ” within the meaning of the codicil. The most essential power taken from her, that of sale, is not conferred upon any one; the trustees having, in this respect, no greater right than she has herself.
The power applies to the half part of the real estate interests given to Mrs. Langdon’s other children and their issue in the first clause, and to the whole of the real and personal interests given to them in the second clause of the codicil; and, of course, it operates to the extent of an undivided half of the half part so given in the first, and of the whole contained in the second clause.
Next, as to the lot described in the fourth clause. The codicil in so many words gives the lot to Cecilia Langdon. The further expression, that it is to be had and holden, as if her name were written in the original devise thereof, was inserted in order to subject it to the proviso which was attached to the lot, in that devise to Mrs. Kane in the fifth codicil. We have no difficulty in deciding that this lot is subject to the exercise of the power.
As to the share of Mrs. Kane in the water stock, mentioned in the third clause of the sixth codicil, there can be no doubt *538 that the power applies to the residuary gift made to Mrs. Lang-don’s other children. The income being given for life to the donee of the power, the question upon its application to that is more embarrassing. An absolute gift of money, coupled with an express power to appoint it to a particular person, is a legal anomaly. The gift confers a general right of disposal, upon which such a power is a qualification, rather than a power in its legal sense. We do not see how this power can be applied to the income of the water stock, either as a beneficial power, or as a special power in trust, within the definition given of those powers by the revised statutes.
Proceeding upon the conclusion we have formed as to the mode of exercising the power conferred by the fifth clause, which is, that it must be exercised upon undivided portions of all the property taken from Mrs. Kane and her children, and not -by singling out the whole or any less portion of any one specific item of property, we think this legacy of the income of the water stock comes within its operation, not as a power technically, but as being thereby made a conditional legacy. The effect of the third and fifth clauses taken together is the same as if the testator had said, “ I give this income to Mrs. Langdon for life, on condition that if she exercise the power conferred on her so as to restore to Mrs. Kane any part of the property by this codicil taken from her, she shall yield to her the same part or share of the income of the water stock.” He had, by the codicil, taken the water stock from Mrs. Kane, and had given it to others, Mrs. Langdon being one ; it was plainly Ms intent to provide for a restoration of a share of all the property so taken away, and by the codicil given to others ; he has made no exception in favor of the donee of the power ; and we think none should be made because of a technical difficulty in its exercise.
Especially should this be so, when the donee, in executing the power, has made no exception. She has applied it to all the property, which by the codicil she was authorized to give and appoint to Mrs. Kane and her issue. Whether regarded as a gift coupled with the power, and, therefore, conditional, or as an absolute gift to herself, Mrs. L. was authorized by the codicil so to give and appoint the income. Her omission to except *539 it shows, that whether controlled by the power or not, she intended to give it to her daughter, and her note to the executors of June 9th, 1848, confirms this intent in the most unequivocal manner. On this ground, if we are wrong in treating it as a conditional legacy, we shall hold that the half of the income during Mrs. L.’slife has been vested in Mrs. Kane and her issue.
It remains to decide upon the two legacies of twenty-five thousand dollars each. They are taken from Mrs. Kane by the sixth codicil. Are they by that codicil given to others ?
There is no gift of these sums in express terms in the codicil. The revocation of the legacies caused them to fall into the general residuary personal estate. By the first codicil, half of this residuary estate is given to William B. Astor absolutely, the income of the other half is given to him for life, and the balance unexpended by him in the improvement of the real estate devised to him and his family, is given upon his death to his children, subject to his appointment among them.
The direct consequence of the sixth codicil is to confer these two legacies upon Mr. Astor and his family. They are not given to him or them directly, or in terms, by the codicil; but they are so given indirectly. Mr. A. and his family are entitled to them by the making of the codicil. But for its execution, they never would have been so entitled. Therefore, does not the codicil give to them the two legacies, within the spirit of the fifth clause ?
We cannot discover in the will or codicils, any motive the testator could have had to except these legacies from the operation of the power. He has expressed no intention to except from it any specific portion or parcel of the property affected by the sixth codicil. We cannot infer such an intention from his omission to bequeath the legacies specifically to Mr. Astor and his family in the codicil. That would have been pure surplusage, so. far as the substituted legatees were concerned ; because the legacy was effectually made to them by the entire revocation of the bequests previously made to Mrs. Kane. The first codicil gave these revoked bequests to the residuary legatees, just as certainly as it would have been done by a new direct gift.
On the other hand, there is much force in the argument that the same reasoning would apply if there were no residuary *540 legatee, and by the revocation the legacies had gone to the next of kin. And moreover, the pointed language of the revocation of these two gifts, so different from the general revocation in the last clause of the codicil, occasions us no little difficulty in determining the question. It may be said that the short words, “ I revoke the legacies entirely,” were adopted as having the desired effect to transfer them to the residuary legatee in the proportions and for the uses expressed in the will, instead of resorting to an express gift to those legatees, which, if fully inserted in the codicil, would have required considerable amplification in order to vest the legacies in the same manner that the'residue was given by the first codicil.
As to the suggestion that the words “ given to others” will be deprived of all significance and effect, if the power be held to apply to the two legacies, we answer that those words will, on that construction, nevertheless have effect in excluding from the operation of the power the half of the real estate given to trustees in the first clause.
In fine, we conclude, though not without hesitation, that a just and proper interpretation of the sixth codicil requires us to decide that what the codicil works out by its direct operation and effect in favor of others, must be deemed as given by it to those others, and that the two legacies in question come within the scope of the power conferred on Mrs. Langdon.
The execution of the power next demands our attention. The first instrument executed by Mrs. Langdon, dated April 6th, 1848, is in terms large enough to embrace all the property to which the power was applicable. The only difficulty is in the form of the limitation, which is “ to the said Louisa and her issue in as full and ample a manner as I can or may appoint and give under the provisions of said codicil or any part thereof.”
As we have already said, the power, properly construed, required the donee to give a life estate to Mrs. Kane, with remainder to her issue; and by issue is plainly meant, not merely those living at the testator’s death, or when the power was executed, but all the issue of Mrs. K. during her life. Such being the construction of the power, and the appointment' operating only by and under the codicil, it can have no other or different effect than we should give to the latter.
*541 Although, in this respect informally expressed, the appointment, in connexion with the will, gives to Mrs. Kane an estate and interest for her life in all the property to which the power was applicable, including with it the income of the water stock, and to her issue, now born and hereafter to be born, the remaining absolute estate and interest in the same property. The issue living when the appointment was made took vested remainders, which would open to let in the others in succession as they should be born respectively. Those born since the appointment are, therefore, vested with the same estates and interests, and to the same extent, as those born before it was executed.
In giving this effect to the limitation to “ Louisa and her issue,” (and we can give to it no other, unless we hold that those then in being took, with her, equal shares in fee and absolutely,) we do not see how we can except from it the half of the two pecuniary legacies, although by the will they were given to her without qualification. So as to the half df the lot on Lafayette Place, mentioned in the fourth clause of the codicil. The power of appointment, apparently, does not authorize the donee to give estates to Mrs. Kane in one parcel of the property different from those given in other parcels. The limitations, it would seem, must be the same in all. If the donee might have exercised a discretion in this respect, she has not thought proper to do so. She has made a simple appointment of the whole, and as in respect of the great mass of the property, she could confer no more than a life estate or interest on Mrs. Kane, and, therefore, no other is given in that part by the execution of the power, no other or greater interest can be established, upon the terms used in such execution, in her favor in the residue of the property.
As the power is silent in regard to any ulterior limitations on failure of issue, we must also hold that none were intended, and therefore,- none are made by the execution of the appointment.
The donee having executed the power, by an instrument giving to Mrs. Kane and her issue all that she could give them under the codicil, and such estates and interests as she could lawfully give; it is unnecessary for us to consider the questions which *542 were argued as to the nature of the power, and whether it was discretionary or imperative.
A judgment must be entered in accordance with our decision upon the various points determined :—The respective parties to bear their own costs of the suit. The questions decided relate almost exclusively to provisions made by the testator for a single branch of his family, and, therefore, the case does not, apparently, fall within the class of like controversies in which the court has directed the costs of the suit to be paid out of the estate at large. As this point was not argued, however, we will not refuse to hear either of the parties in regard to it, on settling the form of the judgment to be entered.