15 Cal.2d 328 (1940)
In the Matter of the Estate of WALTER S. KEET, Deceased. THE FARMERS AND MERCHANTS NATIONAL BANK OF LOS ANGELES (a National Banking Association), as Trustee, etc., Appellant,
v.
GEORGIA KEET YOUNG REED et al., Respondents.
L. A. No. 16698. 
Supreme Court of California. In Bank. 
March 30, 1940.
 Chenoweth & Whitehead, Morton L. Barker, Lawler & Felix and Lawler, Felix & Hall for Appellant.
 Walter E. Drobisch, Frank G. Finlayson, James S. Bennett, Hubert T. Morrow, John A. Hewicker, George I. Devor, George L. Reimbold, Overton, Lyman & Plumb, Swarts & Tannenbaum, Howard F. Shepherd, Ben W. Utter, M. J. Rankin, Milo V. Olson, Loyd Wright, Charles E. Millikan *330 and S. Earl Wright, as Amici Curiae, on Behalf of Appellant.
 Howard & Littlefield, Frederick L. Howard, Forrest E. Littlefield and Newby & Newby for Respondents.
 GIBSON, J.
 This is an appeal from a decree of the probate court disallowing a portion of a current account and report of a testamentary trustee.
 Walter S. Keet died August 13, 1926, leaving respondent, his widow, surviving. His will, admitted to probate September 13, 1926, created trusts in a part of the estate, which trusts were embodied in the decree of distribution made November 14, 1927.
 The relevant trust provisions of the will as contained in the decree of distribution were as follows: (1) A general trust was created, to collect and accumulate the income of most of the property until a future date. The trustee was given broad powers of management, with right to sell and reinvest. (2) Next, the trustee was directed to pay to a Mrs. Emma Hubbard the net income from certain specified property. (3) The provision involved herein then follows: "Said trustee shall set apart as a separate and special fund all common stock belonging to decedent in the United Steel and Wire Company of Battle Creek, Michigan, and shall pay to said Georgia S. Keet, widow, the net income derived therefrom during her natural lifetime--and shall pay to said widow all dividends accruing upon said stock from the date of death of the decedent herein; and upon the death of said widow, this separate and special trust fund shall become a part of the general trust fund of said estate."
 Leslie Clawson, the named trustee, subsequently resigned, and was replaced by appellant bank. The new trustee treated the various trusts separately, and the only questions on this appeal arise in connection with its administration of the trust for respondent widow. At the time of its appointment, in March, 1928, the corpus of this trust consisted of 3,240 shares of United Steel and Wire Company, appraised at $24,300. Later in 1928 the company split its stock, issuing two new shares in place of each old one, thus making 6,480 shares in the trust.
 In 1934 and the following year the trust investment officers of appellant on several occasions discussed the advisability *331 of disposing of part of the stock, and the purchase of high-grade bonds, for diversification of investments. Investigations were made as to the price which might be obtained (the stock being unlisted), and finally in March, 1936, respondent was advised that appellant's trust investment committee had decided to seek authority from the probate court to sell a substantial portion.
 On May 7, 1936, appellant filed a petition under section 1120 of the Probate Code, entitled, "Petition for Instructions, for Authority to Sell Stock and for Authority to Invest Proceeds From Sale of Stock." In it the trustee alleged "that after careful investigation made by your petitioner, your petitioner has concluded that it is for the best interests of said estate and in order to bring about a more extensive diversification in the assets held by your petitioner, to sell approximately one-half of three thousand two hundred forty (3,240) shares of said common stock of the United Steel and Wire Company; that your petitioner desires this Honorable Court to authorize and direct your petitioner to sell said three thousand two hundred forty (3,240) shares of common stock of the United Steel and Wire Company on the open market at the current market price on the date of sale at a price not less than $7.50 a share." It was further alleged that the trustee desired authorization to invest the proceeds in national government, state or municipal bonds or such securities as are authorized as legal investments for savings banks.
 Due notice of hearing was given, and respondent was fully informed of the time and purpose of the proceeding. She had a discussion with a trust officer of appellant prior to the hearing, at which she expressed objections, but declared that in view of the thorough investigation which was represented to have been made, she would not protest the sale if the trustee thought it was for her best interests. Thereafter on May 22, 1936, the court granted the petition and made its order authorizing the sale of 3,240 shares at not less than $7.50 per share, and reinvestment of the proceeds in municipal bonds. The order recited that it appeared "to the best interests of said estate" that the trustee be authorized to make the sale and reinvestment. In the next few months appellant proceeded to sell to various persons who had bid on the stock as follows: To Mr. Genebach, president of the *332 United Steel and Wire Company, 1,000 shares at $9.75 per share; to a brokerage firm, 1,000 shares at $14 per share; and to another brokerage firm, 1,000 shares at $14 3/8 per share. The balance of 240 shares was left unsold. Recommendations of substitute securities were made by the trustee to respondent, and her approval obtained, whereupon the bonds were purchased.
 The change proved unprofitable. The stock kept on rising in value until in November, 1936, its market price was $19 per share. Substantial dividends were continued, and in 1937 another stock split-up of two shares for one was made. On the other hand, a premium had been paid for the municipal bonds, and their market value declined slightly. In figures, it was stipulated that at the time appellant filed its present account, in April, 1937, the value of the corpus was $106,050, and would have been $129,600 if the stock had been retained. It was also stipulated that respondent would have received an additional income of $2,034 in the accounting period if the sale had not been made.
 On April 6, 1937, appellant filed its report and eighth current account as trustee, for the accounting period of March 8, 1936, to March 8, 1937. The sale and reinvestment was set forth, and prayer was made for the allowance of trustee's fees and attorneys' fees. Respondent filed objections to the account, alleging the loss of income, and after answer by appellant, a trial was had before a new judge. The court found that appellant trustee had sold the stock without authority to do so; that it had no power to reinvest the proceeds in the bonds which it purchased; and that it was chargeable with 6,480 shares (or 12,960 shares under the second split-up) of the stock of the company, at its market value of $129,600. The detailed conclusions of law filed by the court, which more fully disclose its theory, may be summarized as follows: The testator's object was to set aside a special trust fund for his widow in the common stock of this company, to be kept intact, and the income paid to her; that it was the testator's intention that it should not be sold for any purpose; that under the provisions of the decree of distribution the trustee had no power to sell that stock; that the petition filed by the trustee did not ask for a construction of the decree as to the trustee's power to sell, and that the other court in granting the petition did not determine or attempt to *333 determine the powers of the trustee; that the court had no jurisdiction to change the terms and conditions of the decree of distribution, and that its order was in conflict with those terms and void. Accordingly, the present court made its order disallowing the eighth current account with respect to the sale of stock and purchase of bonds, and adjudged appellant chargeable with the stock and liable for the difference in income. Appellant was ordered to file a corrected report and account. The request for trustee's fees was granted, but attorneys' fees in connection with the sale were denied. This appeal followed.
 [1] It is apparent that the order of the lower court must be reversed, on well settled principles. Respondent's objection to the eighth current account on the ground mentioned, namely, lack of power in the trustee to sell the stock, constitutes a collateral attack on the original order authorizing the sale. [2] The petition for instructions and authority to sell was a distinct and independent proceeding, and the order of the court was appealable. (Prob. Code, sec. 1240.) No appeal was taken, and consequently it became a final determination of the matters adjudged, with the force and effect of a final judgment. (See Security etc. Bank v. Superior Court, 1 Cal.2d 749 [37 PaCal.2d 69]; Estate of Davis, 151 Cal. 318 [86 P. 183, 9 P. 711, 121 Am.St.Rep. 105]; Baldwin v. Stewart, 218 Cal. 364 [23 PaCal.2d 283].) [3] On a collateral attack, any attempt to show mere error of the court must necessarily fail. The judgment is conclusive unless wholly invalid on its face, that is, unless its invalidity appears from the judgment roll. (Security etc. Bank v. Superior Court, supra.) The question then is whether respondent has succeeded in establishing the invalidity of the judgment so as to subject it to collateral attack.
 [4] The first theory relied upon by respondent and the lower court is that the order was void because it purported to authorize an act--sale of the stock, in violation of the terms of the will and decree of distribution. We may here concede that there is grave doubt as to whether the general power of sale first given in the will was intended to apply to the special trust for respondent, in view of the testator's express direction that the stock should be set apart and the income paid to the widow. We may further assume, for the purposes of this appeal, that it was error for the court to order the sale in the light of the language of the will and *334 decree, and the lack of any sufficient showing of emergency arising from changed conditions and justifying deviation from the trust provisions. (See Security-First Nat. Bank v. Easter, 136 Cal.App. 691 [29 PaCal.2d 422]; Restatement, Trusts, sec. 167; note, 23 Cal. L. Rev. 86.) Nevertheless, it was not impossible to construe the terms of the will and decree so as to make the general power of sale in the trustee applicable to this particular trust. It would also have been possible for the trustee, upon a proper showing, to secure permission from the court to deviate from express restrictions against sale. When appellant petitioned for instructions and authority to sell, it sought a judicial determination of its powers under the will, the decree, and the applicable law. The court, in granting the petition, made an adjudication of such powers. Its jurisdiction over such proceedings is established by section 1120 of the Probate Code, and appellant complied with all procedural requirements of the section. Having jurisdiction of the subject matter and of the parties, the order of the court, whether correct or not, became res judicata on the issue of power to sell.
 [5] The fact that the petition did not specifically request a construction of the decree of distribution, but simply alleged that petitioner had concluded that it was for the best interests of the estate to sell and diversify investments, is not controlling. Since the trustee's powers were derived from the decree of distribution, the meaning and effect of its provisions were necessarily in issue in the proceeding. The scope of a judgment, when collaterally attacked, is not limited to the factual or legal points expressly urged by counsel or considered by the court; it extends to matters which could have been raised and considered in the particular proceedings under the particular pleadings. (See Silverston v. Mercantile Trust Co., 18 Cal.App. 180 [122 P. 976].) As applied to the instant case, since the powers of the trustee could be derived only from the decree of distribution, the court in granting authority to sell necessarily decided that the decree of distribution permitted such a sale, or that the legal doctrine of deviation in emergency, an exception implied by law in any trust instrument, permitted it. If the court reached its conclusion after a careful study of the decree, a full consideration of the evidence, and an examination of the relevant authorities, its decision would be entitled to great weight. If, on the other hand, as respondent contends *335 and the present lower court found, it did not even have the decree of distribution before it, and made its order without being fully advised in the matter, its decision would hardly be persuasive on appeal. But in either case, the most that respondent could show would be that the decision was erroneous, that is, that it decided the issue of power to sell, and decided it wrongly. Such legal error committed by a court within its jurisdiction can be corrected only on direct attack, as by appeal; and when the opportunity for direct attack is gone, the judgment can no longer be questioned.
 The other contention of respondent and the lower court is that the first court, before which the original petition was filed, had no jurisdiction to determine the issue of power to sell, because the petition did not allege sufficient facts to give it jurisdiction under section 1120 of the Probate Code. The argument seems to be that though entitled "Petition for Instructions", it did not allege any doubt as to the trustee's power, nor did it seek any instructions, but merely requested authority to sell on the basis of the allegation of the trustee that it had concluded this would be to the best interests of the estate.
 [6] It may be noted here that the basic assumption of this argument is wrong; the section requires no particular form of application, but merely states that the trustee may petition the court, from time to time, for instructions as to the administration of the trust. Moreover, the decrees of the probate court in matters which, like these, are clearly within its statutory grant of jurisdiction, have the same effect, and are supported by the same presumptions on collateral attack, as the judgments of a court of general jurisdiction. Allegations of the jurisdictional facts in the pleadings are therefore unnecessary. (Wood v. Roach, 125 Cal.App. 631 [14 PaCal.2d 170]; Security etc. Bank v. Superior Court, supra.)
 [7] But there is another and simpler answer to this argument: The asserted defect in the petition is not, in truth, a failure to allege jurisdictional facts. The contention of respondent is that although the court had jurisdiction over the trust, the trustee, and the beneficiary, that is, the subject matter and the parties, the petition failed to state sufficient facts to warrant the granting of relief. Failure to state a cause of action is not, however, a jurisdictional defect, and cannot be a ground of collateral attack. (Gillespie v. Fender, *336 180 Cal. 202 [180 P. 332]; Christerson v. French, 180 Cal. 523 [182 P. 27]; Behrens v. Superior Court, 132 Cal.App. 704 [23 PaCal.2d 428].)
 The judgment, in so far as it disallows the report and account of the trustee and denies attorneys' fees, is reversed with directions to allow the report and account, and to award such attorneys' fees as the court may deem reasonable. That part of the judgment which allows trustee's fees is affirmed.
 Shenk, J., Houser, J., Curtis, J., and Waste, C.J., concurred.
 CARTER, J.,
 Concurring.
 With some mental reservation I concur in the conclusion reached in the opinion of Mr. Justice Gibson, which, as I understand said opinion, is predicated upon the proposition that the order of the trial court authorizing the trustee to sell the United Steel and Wire Company stock had become final and that it was not subject to collateral attack in the manner in which respondent sought to attack said order in this proceeding. From a strictly legal standpoint, this conclusion is inescapable.
 However, the trial court found that the trust officers of appellant represented to respondent that they had made a full and fair investigation of United Steel and Wire Company and that there was something wrong with it, whereas, in truth and in fact, said trustee had not made a full and fair investigation, and that such investigation if actually made would have revealed that said company was in a sound financial condition; that at the time the trust officers represented to respondent that the sale would be to her best interest, the trustee well knew that the sale of said stock would result in a loss of income and injury to respondent rather than benefit; that respondent relied upon the representations of the trustee, had no independent legal advice, and the trustee never suggested that she obtain it; that in relying upon the representation of the trustee, she did not contest the petition for leave to sell the stock; that she approved the subsequent purchase of bonds without knowledge of the loss that she was suffering. Respondent also asserts that the trustee did not inform her that any doubt existed as to its power to sell the stock; that it concealed this doubt from the court by framing the petition in such a manner as to lead the court to believe that a general power existed and that the trustee *337 was simply asking for instructions on a matter within the discretion of the trustee; and that in such proceeding it failed to disclose to the court the contents of the decree of distribution relative to the above-mentioned stock.
 In my opinion the above-mentioned matters constitute sufficient grounds upon which respondent can obtain relief in a proper proceeding for the injury suffered by her as the result of the conduct above narrated. There can be no question but that gross misrepresentation by a trustee, resulting in loss to a beneficiary, constitutes a breach of trust, justifying both removal of the trustee and damages for any loss suffered by the beneficiary. Such relief, however, must be obtained in an appropriate action by the beneficiary against the trustee. The original decree authorizing the sale of the stock would, of course, be res adjudicata on the power to sell the stock and would preclude any subsequent attack on the trustee's action on the theory of bad judgment in the matter, but it would not prevent a wholly distinct action for damages for actual fraud under the facts and circumstances claimed by respondent to have existed in connection with the transaction which is the subject of this controversy. In addition, there may be a further remedy for the alleged imposition practiced upon respondent and the trial court by the trustee in failing to disclose the source of its power and the doubt which existed as to its right to sell the stock. If respondent can make out a case of imposition upon the court amounting to extrinsic fraud, an independent action in equity could be brought to set aside the original decree authorizing the sale of the stock, without regard to lapse of time.
 I deem it advisable to mention the foregoing matters because both the trial court and the District Court of Appeal held in favor of respondent in the case at bar, which is a persuasive indication to my mind that there is merit in respondent's claim that she suffered injury as a result of the improper conduct of the trustee, and I regret that because of the rules announced in the majority opinion, the redress to which respondent is entitled cannot be obtained in this proceeding.