[Civ. No. 3285.   Fourth Dist.   Jan. 19, 1945.]

MARJORIE C. VINCENT, Appellant, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Association), as Trustee, etc. et al., Respondents.

Harvey, Rimel & Harvey and A. P. G. Steffes for Appellant.

Forgy, Reinhaus & Forgy for Respondents.

BARNARD, P. J.—This is an appeal from a judgment of dismissal after a demurrer to the first amended complaint had been sustained without leave to amend. The action involves the right of the appellant to share in the income from a trust fund established by the decedent, it being conceded that she

is entitled to one-half of the corpus of the trust estate at the termination of the trust.

Hattie J. Vincent died on July 27, 1939, leaving a will dated July 26, 1938, which was probated in Orange County. She left most of her property in trust and the only controversy here is with respect to the meaning and intention of two paragraphs of her will relating to the disposition of the income from and corpus of the trust estate. It is not contended that any other parts of the will throw any light upon the testator's intention in these respects. These paragraphs read as follows:

## "X.

"The entire net income received and derived from the trust estate and applicable therefor shall be payable in the sum of Twenty-five Dollars ($25.00) per month to my mother, Julia Smith, for and during the period of her natural life, and the remaining net income shall be payable to the order of my grandsons, Ronald Emerson Vincent and Robert Leroy Vincent, in equal shares quarterly, or other convenient installments, for the duration of this Trust, which shall be from the date of my demise to and including the first day of July, 1955, provided, further, that in the event of the demise of either Ronald Emerson Vincent or Robert Leroy Vincent, prior to July 1st, 1955, then this trust shall continue during said period, and the entire remaining net income of said trust estate shall be payable to the survivor during the remaining period of this Trust and not to the creditors of his estate.

## "XI.

"This trust shall *ipso facto* cease and determine on the 1st day of July, 1955, and the entire corpus of the trust estate, together with any accumulations thereto, in the hands of the Trustee, shall go to and be conveyed and delivered in fee by said Trustee, as follows:

" (1) One-half thereof to Ronald Emerson Vincent, providing he survives distribution thereof, otherwise to his heirs at law;

" (2) One-half thereof to Robert Leroy Vincent, providing he survives distribution thereof, otherwise to his heirs at law;

" (3) In the event of the death of said Ronald Emerson Vincent prior to distribution of my estate under this trust, then his share shall go to his wife, if any, otherwise to his heirs at law;

"(4) In the event of the death of said Robert Leroy Vincent prior to distribution of my estate under this trust, then his share shall go to his wife, if any, otherwise to his heirs at law."

A decree of distribution was entered on May 1, 1942. This decree is not in the record, but the appellant sets forth in her brief paragraph "(9)" thereof, which provides that at the termination of the trust the entire corpus of the trust estate "shall be delivered and distributed as follows:

"(a) One-half to Ronald Emerson Vincent, providing he survives such distribution, and, if he does not, his said share shall be distributed to his then wife, if any, if he leaves no wife, then to his heirs at law;

"(b) The remaining one-half to Robert Leroy Vincent, providing he survives such distribution, and, if he does not, his said share shall be distributed to his then wife, if any, and if he leaves no wife, then to his heirs at law."

The terms of the decree of distribution relating to who shall receive the income from the trust during its existence are not specifically set forth but apparently they followed the provisions of paragraph X of the will, as above set forth.

On January 15, 1943, Ronald Emerson Vincent, one of the grandsons, died. The appellant, who is his widow, demanded of the trustee that one-half of the net income of the trust estate be paid to her. On April 29, 1943, the trustee petitioned the court for instructions relative to its duty in this regard. The appellant appeared and presented her claims at the hearing on that petition. The court found that there was no ambiguity in the decree in this respect and instructed the trustee to pay the entire net income from the trust estate to the surviving grandson Robert Leroy Vincent. This order was made on June 16, 1943, and has become final. However, the appellant announced at the hearing that she would bring an action in equity and this action was brought before that order became final.

The first amended complaint alleged, among other things, that on November 22, 1934, the testatrix executed a prior will which had been prepared by one of the present attorneys for the appellant; that in this prior will she had established a similar trust; that in one paragraph thereof she had provided that the net income from the trust estate should be paid to her two grandsons and in the event of the death of either

the entire net income should be paid to the survivor during the existence of the trust; that in another paragraph she had provided that at the termination of the trust the corpus should go to the two grandsons or to their issue, if they did not survive, with the further provision that in the event of the death of either prior to distribution of the trust estate one-half of the net income should be paid to the issue of the deceased grandson during the continuance of the trust; that in 1936, Ronald Emerson Vincent and the appellant were married; that in 1938 one of the trustees mentioned in that will died; that the testatrix then instructed this attorney to prepare a new will based upon the old will with certain modifications; that she instructed him to include in the new will a provision to the effect that in the event of the death of Ronald Emerson Vincent his share, both of the corpus and income of the trust, should go to his surviving widow, if any, otherwise to his heirs at law and that the provisions of the old will should be modified to carry out this intent; that pursuant to her instructions this attorney prepared the new will by carrying these provisions of the old will into the new will with some change of language and by putting certain portions in differently numbered paragraphs; that this was done as a matter of convenience and not with the intent that any paragraph should relate wholly either to income or to corpus of the trust estate; that this new will was executed on July 26, 1938; that the testatrix then understood, intended and believed that paragraph XI of this will meant and provided that the appellant should receive the share of Ronald Emerson Vincent, both corpus and income, in the event of his death; that at the hearing on the petition for distribution the court's attention was called to another matter not material here, but was not specifically called to the matter of the disposition of the income from the trust in the event of the death of either grandson, both of them then being alive; that on May 1, 1942, the decree of distribution was entered but through the inadvertence of the court, the executor and the attorney the decree failed to include any provision which would clearly express the intention of the testatrix that in the event of the death of Ronald Emerson Vincent during the life of the trust his share, both of corpus and income, should go to his widow, if any, otherwise to his heirs at law; that at all times the court, the executor and this attorney believed

that the decree coincided with the language of the will with respect to what should happen on the death of either grandson; that at the hearing on the trustee's petition for instructions as to how the income should be paid the court determined that this portion of the decree of distribution was not ambiguous, uncertain or vague and rejected the offer of the appellant to introduce into evidence the last will of Hattie J. Vincent executed on July 26, 1938, in order to establish the true intent of the testatrix with reference to the payment of one-half of the net income of the trust estate to the appellant; and that the appellant then advised the court that she intended to bring an action in equity for the purpose of having the decree of distribution changed to conform with the language used in the last will, and having that language interpreted to the effect that during the life of the trust one-half of the net income should be paid to the appellant. A second cause of action alleges that a controversy exists with reference to the payment of one-half of the net income from the trust estate since the death of Ronald Emerson Vincent, that the appellant contends that she is entitled thereto under the terms of the will, and that the respondents contend that Robert Leroy Vincent, the surviving grandson is entitled thereto. The prayer is that the court determine and declare the rights of the parties, that the decree of distribution be amended to set forth verbatim the provisions of paragraph XI of the will, and that when so revised said decree be interpreted and construed as providing that since the death of Ronald Emerson Vincent the appellant is entitled to one-half of the distributable net income from the trust estate.

The appellant first contends that the probate court has erroneously construed this will and, through the mistake of the court and of the parties then before it, has failed to carry the provisions of paragraph XI of the will, as properly interpreted, into the decree of distribution. It is argued that paragraph XI does not relate solely to the distribution of the corpus at the termination of the trust; that subdivision (3) of paragraph XI provides that in the event of Ronald's death "his share" shall go to his wife; that he had no vested share in the corpus since he might die before the termination of the trust; that the words "his share" must refer to his share at the time of his death; and that since the only share he then had was one in the income this provision relates to the income

from the trust and means that his share of that income shall go to the appellant. It is then argued that subdivisions (3) and (4) of paragraph XI of the will are entirely omitted from the provisions of the decree of distribution, and that through this mistake the appellant has been deprived of what was given her under the terms of the will. It is then argued that this is the reasonable interpretation of the language used in the will, that this disposes of the entire estate in accordance with the general plan which the testatrix had in mind, and that the fact that the testatrix had such an intention is further disclosed by the language she used in her first will.

In effect, this is an attempt through an action in equity to secure an interpretation of the language used in the will other than and different from that already adopted by the court, whose decree has become final. This may not be done except where the decree may be attacked for extrinsic fraud or certain jurisdictional defects. (*Cook* v. *Cook,* 17 Cal.2d 639 [111 P.2d 322]; *Metzger* v. *Vestal,* 2 Cal.2d 517 [42 P.2d 67]; *Moor* v. *Vawter,* 84 Cal.App. 678 [258 P. 622].) Moreover, the will here in question has again been interpreted by the court in the proceeding in which the trustee asked instructions with respect to its duty in this particular matter. (*Estate of Keet,* 15 Cal.2d 328 [100 P.2d 1045].) No extrinsic fraud is claimed and the only mistake relied on is that the court, in making the decree of distribution under the guidance of one of the appellant's attorneys, did not adopt the exact language of the will. It is true that two parts of paragraph XI of the will are irreconcilable. Subdivision (1) thereof gives one half of the corpus at the termination of the trust to Ronald if then living, otherwise to his heirs at law. Subdivision (3) of that paragraph, in the event of his death prior to such termination, gives that half to his wife, if any, otherwise to his heirs at law. Under section 103 of the Probate Code all of the parts of a will are to be construed in relation to each other, where possible, and the court correctly construed these two provisions together as meaning that in the event of the death of Ronald the property otherwise going to him under paragraph XI should go to his wife if he had one, otherwise to his heirs at law. Moreover, section 103 of the Probate Code provides that where several parts of a will are irreconcilable the latter provision must prevail. There is no controversy here over what was done in this regard insofar

as the distribution of the corpus of the estate at the termination of the trust is concerned.

The language used in paragraph XI of the will is plain and explicit, and it clearly provides for what shall be done with the corpus of the estate at the termination of the trust and for nothing else. There is no room for construction or interpretation in this regard. The use of the words "his share" in subdivision (3) of that paragraph clearly relates to what would be his share if he were then living. The time to which those words relate is not the time of his death but the time of delivery of the corpus at the termination of the trust estate. That is the only time mentioned or referred to in paragraph XI, as clearly shown by the language used.

Nor would appellant be any better off if this will were again to be interpreted and construed. Not only is the construction placed upon it by the probate court a reasonable one but it appears to be the only one that could be given it under established rules. ▇▇ The testator's intention is to be ascertained from the words used in the will (Prob. Code, § 105). Paragraph X of the will relates to the income from the trust during its existence and clearly provides that in the event of the death of one of the two grandsons the entire remaining income shall be paid to the survivor. Paragraph XI relates entirely to the disposition of the corpus of the trust estate at its termination and does not purport in any way to provide for what shall be done with the income from the trust estate in the event of the death of one of the grandsons pending the termination of the trust. Under such circumstances, no mistake of any kind appears in this connection, either in the will or in the decree of distribution, and what may have been intended or done by the testatrix in her first will, which was later revoked, could not be material here. It may be further observed that even the first will made no provision for the payment of any of the income to the wife of a deceased grandson.

▇▇ The appellant further argues, under the authority of *Bacon* v. *Bacon*, 150 Cal. 477 [89 P. 317], and similar cases, that this decree of distribution may be attacked in an equity action such as this. It is, of course, well settled that a decree of distribution is subject to review in equity upon a showing that it was procured by fraud or mistake. There are no allegations in this first amended complaint which would bring

this action within that rule. No facts are given which show or indicate any extrinsic fraud or any mistake within the meaning of that rule. It is alleged, in effect, that the testatrix instructed the attorney mentioned to prepare the will in a manner somewhat different from the terms set forth in the will as executed. ■ The appellant argues that oral declarations of the testatrix, consisting of instructions given by her to her attorney in connection with the preparation of the will and upon which she intends to rely, constitute an exception to section 105 of the Probate Code and are, therefore, admissible. In support of this she relies on *Estate of Dominici*, 151 Cal. 181 [90 P. 448], and on *Estate of Little*, 170 Cal. 52 [148 P. 194], to the same effect. In the first of these cases, no patent ambiguity appeared on the face of the will with respect to the identity of one of the legatees but because of an inaccurate description with respect to the party and the place of residence a latent ambiguity existed and the court held that under those circumstances the instructions given by the testator to his attorney with respect to the preparation of the will could be received for the purpose of clearing up the latent ambiguity. However, in that case, the court said: ''For even in cases where extrinsic evidence is admitted to explain latent ambiguities, and to perfect imperfect descriptions of beneficiaries, or the subject-matter of devises or bequests, no evidence is admissible to change or vary the testator's expressed intent. This must always be deduced from the will itself, assisted by such extrinsic evidence.'' And further: ''It should, of course, be unnecessary to add, that where a will without latent ambiguity expresses a clear intent, such evidence would never be permitted in an effort to show that the intent expressed was a mistaken one. It is only where the description of the person or property by extrinsic evidence is shown to be doubtful or imperfect, that such evidence may be employed in the effort of the court to arrive at and declare the meaning and intent which the testator, by the terms of his will, attempted, however irregularly, to declare. This under the familiar rule of evidence that a doubt arising from extrinsic evidence may be removed by extrinsic evidence.''

There is no latent ambiguity here, and there is nothing in the complaint which would justify the introduction of any extrinsic evidence which would make necessary its removal

by other extrinsic evidence. Under these circumstances the evidence suggested by the allegations of the complaint in this regard would be inadmissible. The intent of the testatrix, as expressed in the will, is clear, precise and definite and neither calls for extrinsic evidence to explain it nor permits an interpretation or construction which would result in destroying the intention clearly expressed.

■ At the oral argument of this case some question was raised as to whether a demurrer could properly be sustained to the second cause of action here alleged, if it asked for declaratory relief, because of the rule laid down in *Maguire* v. *Hibernia S. & L. Soc.*, 23 Cal.2d 719 [146 P.2d 673, 151 A.L.R. 1062]. While the second cause of action alleged the existence of a controversy between the parties with respect to their rights under the terms of the will and the decree of distribution, and prayed that the court determine and declare those respective rights, this was not a declaratory action in the ordinary sense. The action was one to set aside the decree of distribution as entered, to amend it, and then to construe it and the will in a certain way. The court correctly found and held that no cause of action was stated which would justify any relief, the entire matter related to the proper interpretation of this will as expressed in the decree of distribution, there was no controversy as to the rights of the parties under the decree as entered, and the entire purpose of the action was to set aside that decree and secure a different one rather than to secure a declaration as to the rights of the parties under the existing decree. Moreover, section 1061 of the Code of Civil Procedure provides that the court may refuse to exercise the power granted in that chapter in any case where its declaration or determination is not necessary or proper under all of the circumstances. Under the circumstances here appearing, we think the rule referred to is not applicable.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 19, 1945.